Opinion
 

 STRANKMAN, P. J.
 

 This appeal is from a wardship order (Welf. & Inst. Code, § 602) based on findings that appellant Jerry R. violated Vehicle Code sections 10851 (auto theft) and 12500, subdivision (a) (driving without a license) and Penal Code section 246.3 (willful discharge of a firearm in a grossly negligent manner). Appellant, who was only 12 years old, was removed from the custody of his parents and committed to the probation officer for out-of-home placement.
 

 We conclude the finding that appellant violated Penal Code section 246.3 must be reversed because the trial court’s comments reveal its misunderstanding of the elements of that offense.
 
 [2]
 
 In the unpublished portion of this opinion, we conclude substantial evidence supports the trial court’s findings that appellant appreciated the wrongfulness of his conduct and had the requisite intent for the Vehicle Code offenses.
 

 I. Facts
 

 A.
 
 The Auto Theft
 

 On April 18,1991, Police Officer David Fontana spotted a Datsun station wagon “spinning donuts” on a baseball field. As he approached, the vehicle
 
 *1435
 
 stopped abruptly. Two juveniles fled from the rear passenger door; appellant jumped out from the driver’s door and started running. Fontana chased appellant into a nearby building. When Fontana grabbed appellant, the boy said, “I wasn’t driving any stolen car.” At the time appellant was 10 years and 9 or 10 months old.
 

 At the police station, appellant denied occupying or driving the car. After Fontana described what he saw, appellant changed his story. He admitted driving, but claimed that two other boys stole the car.
 

 The car had been stolen sometime that morning from a parking lot. When it was recovered, a garage door opener, stereo speakers, a computer book, and a camcorder were missing from inside the car.
 

 B.
 
 The Shooting
 

 On the evening of December 18,1992, appellant, then about 12, went with Reggie T., Robert O., and Theodore B. to Reggie’s house. Before they went inside, appellant showed Theodore a loaded pistol. The four boys went into Reggie’s bedroom, where they drank brandy and smoked marijuana.
 

 At some point appellant took the clip out of the pistol. Then he started playing with the gun and pointed it at Theodore.
 
 [3]
 
 Theodore pushed appellant and told him to quit. But a couple of minutes later appellant pointed the pistol at Theodore again, from a distance of about five or six feet. The gun went off, and Theodore was shot in the chest. As a result of the shooting, Theodore is partially paralyzed.
 

 Reggie claimed he did not see the shooting and said appellant did not show him the gun. Robert also denied seeing the shooting; he said he was almost asleep on the couch when he heard the “fire.” Robert was sure the shooting was an accident; he said they were all high on alcohol and marijuana.
 

 Reggie’s father, Anthony T., was in his room watching television when he heard “a sound going click, click, like up and down with the barrel.” Then he heard “a thud.” He ran immediately to Reggie’s room. Theodore said he had been shot. The other boys seemed to be in a state of shock; they were just gazing at Theodore.
 

 Appellant, Robert, and Reggie left the house. Robert said that Reggie’s father told them to “tear up out of there.” Robert went home; later, he went to Theodore’s house and told his mother what had happened. Police Inspector Thomas Buckley interviewed Robert that night. According to Buckley,
 
 *1436
 
 Robert said he saw appellant take a .25-caliber automatic pistol out of his coat, wave it around, and point it at Theodore. Robert also saw appellant remove the magazine from the bottom of the gun; Robert saw bullets and thought the safety was on. Theodore and appellant were roughhousing and play fighting; appellant was waving the gun around, and it went off. Robert also told Buckley that appellant asked Reggie’s father and Theodore not to tell on him.
 

 Appellant testified in his own defense. He said he bought the gun from another boy before he ran into Reggie, Robert, and Theodore. He showed the gun to Theodore, but not to the others. He drank some brandy and smoked weed at Reggie’s for around two hours; he felt high. Then Robert saw the gun and helped him take out the clip; a bullet also popped out. Appellant thought the gun was empty. He was playing and waved the gun at Theodore. They stopped playing; then appellant pointed the gun at Theodore again and it went off. Appellant is right-handed and was holding the gun in his left hand, his finger at the trigger. The gun fired when Theodore bumped him.
 

 Appellant said that after he ran out of the house with Robert and Reggie, he went back to retrieve the gun. He said he threw the gun on the roof, but admitted telling Police Lieutenant Carlin that he left the gun on Reggie’s steps.
 

 II., III
 
 *
 

 IV. Section 246.3
 

 Based on the evidence of the shooting, the trial court found true the allegation that appellant violated section 246.3. That statute provides in pertinent part: “Except as otherwise authorized by law, any person who willfully discharges a firearm in a grossly negligent manner which could result in injury or death to a person is guilty of a public offense . . . .”
 

 Appellant’s counsel asked the court whether it had found that appellant believed the gun was loaded. The court replied, “As far as I am concerned, whether or not he knew the gun was loaded is immaterial. Your argument [that appellant did not intend to fire the gun because he believed it was unloaded] seems to me to overlook the words grossly negligent.” The court added, “I want to say that the minor’s credibility and the credibility of many of the other witnesses leaves a lot to be desired. HQ I certainly don’t feel that the discharge of the gun was an involuntary accidental act. I believe that he
 
 *1437
 
 pulled the trigger. There is no doubt in my mind about that. [1] I don’t know what was in his mind when he pulled the trigger but I have no doubt in my mind that he pulled the trigger.”
 

 Appellant contends that because the statute prohibits “willfully” discharging a firearm, proof of an intent to fire the weapon was required. Elementary principles of statutory construction and criminal law support his argument.
 

 The objective of statutory interpretation is to ascertain and effectuate legislative intent. To accomplish that objective, courts must look first to the words of the statute, giving effect to their plain meaning. If those words are clear, we may not alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.
 
 (Burden
 
 v.
 
 Snowden
 
 (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) Whenever possible, we must give effect to every word in a statute and avoid a construction making a statutory term surplusage or meaningless.
 
 (People
 
 v.
 
 Western Air Lines, Inc.
 
 (1954) 42 Cal.2d 621, 638 [268 P.2d 723];
 
 People
 
 v.
 
 Craft
 
 (1986) 41 Cal.3d 554, 560 [224 Cal.Rptr. 626, 715 P.2d 585].) We cannot create an offense by enlarging a statute, by inserting or deleting words, or by giving terms false or unusual meanings.
 
 (People
 
 v.
 
 Baker
 
 (1968) 69 Cal.2d 44, 50 [69 Cal.Rptr. 595, 442 P.2d 675].)
 

 Statutes are not to be read in isolation, but must be construed with related statutes.
 
 (People
 
 v.
 
 Craft, supra,
 
 41 Cal.3d at p. 560.) When legislation has been judicially construed and a subsequent statute on a similar subject uses identical or substantially similar language, the usual presumption is that the Legislature intended the same construction, unless a contrary intent clearly appears.
 
 (Malcolm
 
 v.
 
 Superior Court
 
 (1981) 29 Cal.3d 518, 527-528 [174 Cal.Rptr. 694, 629 P.2d 495];
 
 Los Angeles Met. Transit Authority
 
 v.
 
 Brotherhood of Railroad Trainmen
 
 (1960) 54 Cal.2d 684, 688 [8 Cal.Rptr. 1, 355 P.2d 905].)
 

 Section 20 codifies the basic rule that the union of act and intent or criminal negligence is an essential element of every crime unless excluded expressly or by necessary implication. (§ 20;
 
 People
 
 v.
 
 Green
 
 (1980) 27 Cal.3d 1, 53 [164 Cal.Rptr. 1, 609 P.2d 468].) The requisite intent may be either general or specific, terms which have been described as “notoriously difficult to define and apply.”
 
 (People
 
 v.
 
 Daniels
 
 (1975) 14 Cal.3d 857, 860 [122 Cal.Rptr. 872, 537 P.2d 1232].) Nevertheless, ordinarily when the statutory definition of a crime consists only of the description of a prohibited act, without reference to intent to do a further act or achieve a future consequence, the crime is one requiring a general criminal intent; the question is whether the defendant intended to do the prohibited act. In other
 
 *1438
 
 words, it is sufficient for a conviction if the defendant intentionally did that which the law declares to be a crime.
 
 (Id.,
 
 at pp. 860-861.)
 

 On occasion, as in this case, a statute prohibits the “willful” commission of an act. The terms “willful” or “willfully,” as used in penal statutes, imply “simply a purpose or willingness to commit the act . . . ,” without regard to motive, intent to injure, or knowledge of the act’s prohibited character. (§ 7, subd. 1.) The terms imply that the person knows what he is doing, intends to do what he is doing, and is a free agent.
 
 (In re Trombley
 
 (1948) 31 Cal.2d 801, 807 [193 P.2d 734].) Stated another way, the term “willful” requires only that the prohibited act occur intentionally.
 
 (Hale
 
 v.
 
 Morgan
 
 (1978) 22 Cal.3d 388, 396 [149 Cal.Rptr. 375, 584 P.2d 512];
 
 People
 
 v.
 
 Gory
 
 (1946) 28 Cal.2d 450, 453 [170 P.2d 433].)
 

 Other statutes in addition to section 246.3 prohibit the willful discharge of a firearm, among them section 246, which provides in relevant part: “Any person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle ... is guilty of a felony . . . ,”
 
 [7]
 
 Courts have held that section 246 is a general intent crime
 
 (People
 
 v.
 
 Froom
 
 (1980) 108 Cal.App.3d 820, 826 [166 Cal.Rptr. 786];
 
 People
 
 v.
 
 Williams
 
 (1980) 102 Cal.App.3d 1018, 1029 [162 Cal.Rptr. 748]), which does not require proof of a specific intent to accomplish an objective, such as to injure, kill, or frighten.
 
 (People
 
 v.
 
 White
 
 (1992) 4 Cal.App.4th 1299, 1303 [6 Cal.Rptr.2d 259].)
 
 [8]
 

 Section 246.3 is an unambiguous statute phrased in terms with established legal meaning. It provides that a person who “willfully discharges a firearm in a grossly negligent manner which could result in injury or death” is guilty of a public offense. The Legislature’s use of the term
 
 *1439
 
 “willfully” means that the prohibited conduct must be performed purposefully or intentionally. The prohibited conduct, the discharge of a firearm, is commonly understood to mean the firing or shooting of a weapon by expelling the charge or bullet. Thus, the statute’s plain language requires proof that a defendant purposefully, willingly, or intentionally fired the weapon, with the added requirement that the firing occurred in a grossly negligent manner which could result in injury or death.
 

 The Legislature could have prohibited simply the grossly negligent discharge of a firearm, with no willfulness requirement. Had it done so, appellant’s belief that the gun was empty would have been of limited significance. When liability is imposed based on criminal negligence, the proof required is aggravated, culpable, gross, or reckless conduct, which is such a departure from the conduct of an ordinarily prudent person under the same circumstances as to demonstrate an indifference to consequences or a disregard of human life.
 
 (Williams
 
 v.
 
 Garcetti
 
 (1993) 5 Cal.4th 561, 574 [20 Cal.Rptr.2d 341, 853 P.2d 507];
 
 People
 
 v.
 
 Penny
 
 (1955) 44 Cal.2d 861, 879 [285 P.2d 926].) A finding of criminal or gross negligence may be based on evidence that a defendant failed to perceive the risk of pointing a potentially hazardous weapon at another person, even if the defendant testifies that he did not believe the weapon could be fired. (See, e.g.,
 
 People
 
 v.
 
 Velez
 
 (1983) 144 Cal.App.3d 558, 562-563, 565-566 [192 Cal.Rptr. 686]; see also
 
 People
 
 v.
 
 Penny, supra,
 
 at p. 873 and cases there cited.) But we must give effect to the statute as written, not as it might have or should have been written.
 

 People
 
 v.
 
 Alonzo
 
 (1993) 13 Cal.App.4th 535 [16 Cal.Rptr.2d 656], apparently the only published case interpreting section 246.3, supports our reading.
 
 [9]
 
 Defendant in
 
 Alonzo
 
 was charged with violating section 246.3 after he shot a gun into the air at 2 a.m. in a parking lot in a commercial area, where some stores were still open. The only issue was whether his firing of the gun amounted to gross negligence that could have resulted in injury or death. The
 
 Alonzo
 
 court held that the shooting constituted gross negligence in that it demonstrated a disregard for human life or an indifference to consequences; the court also held that the behavior actually had the potential for culminating in personal injury or death, either from hitting someone or generating responsive gunfire. Legislative history indicated that the statute was enacted to deter the discharge of firearms on holidays such as New
 
 *1440
 
 Year’s Eve and the Fourth of July, thereby supplementing existing law relating to criminal liability for the discharge of firearms. Defendant’s behavior was precisely what the statute was intended to deter. (13 Cal.App.4th at pp. 539-540.)
 

 Of particular significance here is the
 
 Alonzo
 
 court’s introduction to its analysis, in which it described the elements of the crime as including that the defendant unlawfully discharged a firearm and did so intentionally.
 
 (People
 
 v.
 
 Alonzo, supra,
 
 13 Cal.App.4th at p. 538.) Although dictum, the reference to an intentional discharge requirement is consistent with our reading of the Legislature’s word choice.
 

 The evolution of section 246.3 from its original introduction in the Assembly to its final form confirms that the willful discharge and gross negligence components are discrete elements of the offense. The initial version of the statute provided for a blanket prohibition on the willful discharge of a firearm “in any incorporated city, or while in any public place, or in any prohibited area of an unincorporated territory . . . .” (Assem. Bill No. 3066 (1987-1988 Reg. Sess.) § 1.) It was then amended several times, limiting the circumstances under which criminal liability would attach. The ban on all willful discharge in specified locations was eliminated; the requirement that the willful discharge occur in a grossly negligent manner, with the potential for injury or death, was added.
 

 We next consider the effect of our reading of the statute on this case. Ordinarily statements made by the trial court as to its reasoning are not reviewable. An exception to this general rule exists when the court’s comments unambiguously disclose that its basic ruling embodied or was based on a misunderstanding of the relevant law.
 
 (People
 
 v.
 
 Butcher
 
 (1986) 185 Cal.App.3d 929, 936-937 [229 Cal.Rptr. 910] [court trial; judgment reversed because court’s comments reveal it erroneously read controlling penal statute].) The trial court’s statement that whether appellant believed the weapon was loaded was immaterial reveals its misreading of the elements of section 246.3. Proof of an intentional discharge of the firearm was required, and an honest belief that a gun is empty negatives the mental state of an intent to fire the gun. The two mental states cannot coexist.
 
 [10]
 

 Relying on
 
 People
 
 v.
 
 Colantuono
 
 (1994) 7 Cal.4th 206 [26 Cal.Rptr.2d 908, 865 P.2d 704], the Attorney General argues that appellant’s intentional
 
 *1441
 
 pulling of the trigger evidenced his willingness to fire the weapon, even if he believed the gun was empty. In
 
 Colantuono,
 
 the Supreme Court sought to eliminate recurring confusion about the intent or mental state necessary to establish assault. The majority held that the offense is a general intent crime, with its mens rea established by proof that a defendant intentionally or willfully committed an act that by its nature would probably and directly result in injury to another. No proof of an additional specific intent to inflict a particular harm is required.
 
 (Id.,
 
 at p. 214.) The case does not support the Attorney General’s theory that when a statute simply prohibits the “willful” commission of one act, i.e., the discharge of a firearm, the intentional act requirement may be satisfied by the willful commission of a different act, i.e., the pulling of the trigger of a gun believed to be unloaded.
 

 Because the jurisdictional finding that appellant violated section 246.3 must be reversed, the dispositional order that was based in part on that finding must also be reversed. The People may either retry the section 246.3 allegation or submit the matter for a new dispositional hearing based on the Vehicle Code violations.
 

 V. Misdemeanors or Felonies
 
 [11]
 

 Disposition
 

 The finding that appellant violated Vehicle Code section 10851 is affirmed; the finding that appellant violated Penal Code section 246.3 is reversed, and the dispositional order is also reversed. The People may either retry the section 246.3 allegation or submit the matter for a new dispositional hearing based on the Vehicle Code violations.
 

 Stein, J., and Dossee, J., concured.
 

 Respondent’s petition for review by the Supreme Court was denied February 23, 1995. Baxter, J., and George, J., were of the opinion that the petition should be granted.
 

 [2]
 

 Unless otherwise indicated, all subsequent statutory references are to the Penal Code.
 

 [3]
 

 Theodore said appellant started playing with the gun about two minutes after they arrived; the others said they were at Reggie’s for at least two hours.
 

 *
 

 See footnote 1,
 
 ante,
 
 page 1432.
 

 [7]
 

 See also section 247 (willfully and maliciously discharging firearm at unoccupied aircraft; discharging firearm at unoccupied motor vehicle); section 374c (shooting any firearm from or upon a public road or highway is a misdemeanor); Health and Safety Code section 12084 (prohibiting willful discharge of firearm within 500 feet of explosive manufacturing plant); Fish and Game Code section 3004 (unlawful to hunt or discharge while hunting any firearm within 150 yards of occupied dwelling house, residence, or barn or outbuilding used in connection therewith).
 

 [8]
 

 We have not overlooked
 
 People
 
 v.
 
 Chavira
 
 (1970) 3 Cal.App.3d 988 [83 Cal.Rptr. 851], Defendant in that case claimed the evidence did not support his conviction of violating section 246 because he fired shots at people standing near a house, not at the house, and the shots hit the house accidentally. The court rejected that argument, stating that an act done with reckless disregard of probable consequences is an act done with the intent to cause such a result. The court held that the jury was entitled to conclude from the evidence that defendant was aware of the probability that some shots would hit the house and was consciously indifferent to that result; that intent was sufficient to satisfy the statutory requirement. (3 Cal.App.3d at p. 993.) There was no claim in
 
 Chavira
 
 that the weapon was discharged unintentionally. Because the case concerns the necessary mental state as to the target of the discharge, not the discharge itself, it does not assist our analysis.
 

 [9]
 

 Other cases mentioning a violation of section 246.3 and the underlying facts, but not discussing the elements of that offense, include the following:
 
 People
 
 v.
 
 Higareda
 
 (1994) 24 Cal.App.4th 1399 [29 Cal.Rptr.2d 763] (defendant convicted based on evidence he fired a shotgun at a pursuing car after he committed a robbery);
 
 People
 
 v.
 
 Superior Court (Rodrigo O.)
 
 (1994) 22 Cal.App.4th 1297 [27 Cal.Rptr.2d 796] (prosecution’s evidence indicated minor shot at a car after exchanging hand signals and words with its occupants; alibi defense);
 
 In re Londale H.
 
 (1992) 5 Cal.App.4th 1464 [7 Cal.Rptr.2d 501](defendant conceded shooting firearm at homicide scene).
 

 [10]
 

 “If . . . one is holding a gun supposed to be unloaded, and pulls the trigger expecting no more than a harmless snap of the hammer, but the gun is in fact loaded, and is discharged with fatal consequences, the shooting as well as the killing must be classed as unintentional. . . . And the act itself was unintentional if the word is used to express the shooting, but intentional if the word is used in the sense of crooking the finger or pulling the trigger.” (Perkins & Boyce, Criminal Law (3d ed. 1982) p. 609.)
 

 [11]
 

 See footnote 1,
 
 ante,
 
 page 1432.