55 Cal.App.4th 1398 (1997)
In re TAN T., a Minor, on Habeas Corpus.
Docket No. B110081.
Court of Appeals of California, Second District, Division Four.
June 24, 1997.
*1399 COUNSEL
Michael P. Judge, Public Defender, Albert J. Menaster, Murrey Correa and Jennifer T. Mayer, Deputy Public Defenders, for Petitioner.
Gil Garcetti, District Attorney, George M. Palmer and Aaron Singer, Deputy District Attorney, for Respondent.
OPINION
HASTINGS, Acting P.J.
By petition for writ of habeas corpus, Tan T., a minor, challenges the juvenile court's denial of his requests for release from juvenile hall. He contends that 56 hours elapsed between his arrest and the filing of a petition under Welfare and Institutions Code section 602, 8 hours in excess of the 48-hour time limit stated in Welfare and Institutions Code section 631, subdivision (a), and California Rules of Court, rule 1470(a).[1] We conclude that the juvenile court erred when it declined to release *1400 petitioner. However, because petitioner has previously been released, we deny the petition for writ of habeas corpus.[2]

FACTUAL AND PROCEDURAL BACKGROUND
On February 26, 1997, two petitions were filed concerning petitioner pursuant to section 602.[3] The first petition alleged that on January 16, 1997, petitioner, a 15-year-old minor, was arrested but not detained by an officer of the Los Angeles County Sheriff's Department. It alleged that on January 15, 1997, petitioner had committed the felony of receiving stolen property, namely, a data organizer and cassette player. The second petition alleged that at 1 a.m. on February 24, 1997, petitioner was arrested by an officer of the Los Angeles County Sheriff's Department and detained. It alleged that on February 23, 1997, petitioner had committed the felonies of possessing a firearm by a minor and receiving stolen property, namely, a laptop computer.
The accompanying detention report indicated that petitioner had run away from home a month earlier, that he had been living on the streets with a friend, and that he had a poor relationship with his mother. It recommended that petitioner be detained in juvenile hall because he had shown a disregard for the property of others, and his behavior threatened his own well-being and the community's safety.
Petitioner first appeared before the juvenile court on February 26, 1997. He entered a denial to both petitions and requested release from detention, contending that the second petition must have been filed more than 48 hours after his arrest. The juvenile court denied the request on the basis of the probable cause declaration cited in the detention report, stating that it appeared "that continuance in home of the parents or legal guardian would be contrary to the welfare of the minor...." The juvenile court ordered petitioner's detention "for the protection of the person and property of others as well as the minor."
On February 27, 1997, the parties stipulated that the second petition was filed at 9 a.m. on February 26, 1997.
*1401 At a detention rehearing on March 5, 1997, the juvenile court found that a prima facie case had been established concerning the factual allegations in the second petition, and again denied petitioner's request to be released from detention. Petitioner then filed this petition for writ of habeas corpus and we issued our order to show cause.

DISCUSSION
Section 631, subdivision (a) provides that "... whenever a minor is taken into custody by a peace officer or probation officer, ... the minor shall be released within 48 hours after having been taken into custody, excluding nonjudicial days, unless within that period of time a petition to declare the minor a ward has been filed pursuant to this chapter or a criminal complaint against the minor has been filed in a court of competent jurisdiction." Rule 1470(a) provides a similar treatment: "A child shall be released from custody within 48 hours, excluding nonjudicial days, after first being taken into custody unless a petition has been filed, either within that time, or prior to the time the child was first taken into custody."
(1) Petitioner contends that the juvenile court erred in failing to order petitioner's release from detention pursuant to the 48-hour limit stated in section 631, subdivision (a), and rule 1470(a), in view of the 56-hour delay between his arrest and the filing of the second petition. He relies upon the cases of In re Robin M., supra, 21 Cal.3d 337, and In re Daniel M. (1996) 47 Cal. App.4th 1151 [55 Cal. Rptr.2d 17].
The issue is one of statutory interpretation, which we review de novo. (See Eidsmore v. RBB, Inc. (1994) 25 Cal. App.4th 189, 195 [30 Cal. Rptr.2d 357].) "The objective of statutory interpretation is to ascertain and effectuate legislative intent. To accomplish that objective, courts must look first to the words of the statute, giving effect to their plain meaning. If those words are clear, we may not alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citation.] Whenever possible, we must give effect to every word in a statute and avoid a construction making a statutory term surplusage or meaningless. [Citations.] ... [¶] Statutes are not to be read in isolation, but must be construed with related statutes. [Citation.]" (In re Jerry R. (1994) 29 Cal. App.4th 1432, 1437 [35 Cal. Rptr.2d 155].)
In In re Robin M., supra, 21 Cal.3d 337, the Supreme Court discussed adoption of the statutory scheme relating to detention of minors. "California's statutes dealing with the detention of minors during the pendency of juvenile court proceedings are largely a product of the Legislature's overhaul *1402 of the Juvenile Court Law in 1961. (Stats. 1961, ch. 1616, p. 3476.) In enacting the 1961 revisions, the Legislature substantially followed the recommendations and proposals of a special study commission on juvenile justice which were issued in 1960. That commission found that one of the `major problems' with California's Juvenile Court Law was the `excessive and unwarranted detention of children in the state.' (Commission Report, pt. I, at p. 12; see also In re William M. [(1970)] 3 Cal.3d [16,] 25-26 [89 Cal. Rptr. 33, 473 P.2d 737].) [¶] ... [¶] In order to `minimize the length of detention' (Commission Report, pt. II, at p. 18), the commission recommended that `maximum time limits for hearings should be set forth in the law' and that `[p]riority should be given ... to reducing the time spent in detention prior to a finding of jurisdiction.' (Commission Report, pt. I, at p. 28.) To implement its recommendations, the commission proposed specific statutes, which it enumerated in its report (id., Appen. A, at pp. 51-99), and which the Legislature enacted with few modifications. Those time limits on hearings and detentions remain virtually intact." (In re Robin M., supra, 21 Cal.3d at pp. 342-343, fns. omitted.) Section 631 was one of the statutes noted: "In the event the minor is detained, the probation officer `shall immediately proceed ... to cause the filing of a petition' against the minor. (§ 630, subd. (a) [§ 311].) The minor `shall be released within 48 hours after having been taken into custody, excluding nonjudicial days, unless within said period of time a petition to declare him a ward has been filed....' (§ 631, subd. (a) [§ 313].)" (In re Robin M., supra, 21 Cal.3d at p. 343, fn. omitted.)
While Robin M. did not deal directly with section 631, it dealt with an analogous situation, section 657, which requires that a jurisdictional hearing must be held within 15 judicial days from the order directing detention of the juvenile. In Robin M., at the end of the required time period, the prosecutor was not ready to proceed and the charging allegation was dismissed. The juvenile was ordered released but at his release he was again detained on a new filing. The Supreme Court refused to countenance such an avoidance of the statutory proscription: "In the present case the district attorney sought to avoid the release of the minor after 15 judicial days by using the technique of dismissing the original petition, filing a new petition based on the same transactions, and, after a detention hearing on this second petition, detaining the minor for a new period of 15 judicial days. Such a procedure completely frustrates the Legislature's purpose in strictly limiting preadjudication detention. Ultimately, it leads to the detention of minors for periods of time that the special study commission condemned as `excessive.'" (21 Cal.3d at p. 345.) The court concluded: "A minor must be discharged from custody if his or her jurisdiction hearing is not held within 15 judicial days after a detention hearing. If the juvenile court releases a minor pursuant to the command of sections 636 and 657, the Legislature's intent is completely *1403 frustrated if a district attorney can simply seek the dismissal of one petition and file a second based on the same transaction. Therefore, this court holds that a juvenile detained in preadjudication custody for the maximum period allowed by law must be released from such detention, whether the jurisdiction hearing is continued or a new petition is filed based on the same transactions." (Id. at p. 347.)[4]
In In re Daniel M., supra, 47 Cal. App.4th 1151, the same issue presented in this case was addressed in connection with filing of a supplemental petition and rule 1470(a). The court concluded that because a supplemental petition was not filed within 48 hours the juvenile was entitled to be released. The court cited and relied upon Robin M.: "[T]he Robin M. court noted that detention is the exception, not the rule [citation], and concluded that time limits on hearings and detentions are to be strictly followed so as to avoid the excessive and unwarranted detention of children. [Citation.] [¶] ... [¶] ... The Robin M. decision underscores ... the strict statutory construction to be accorded the time limits set forth in those rules of court dealing with the filing of supplemental petitions." (47 Cal. App.4th at p. 1156.)
Each of these cases clearly identifies and applies the legislative intent regarding detention of juveniles. We see no legal distinction in how section 631 should be analyzed and applied in this situation from the treatment of section 657 in Robin M. and rule 1470(a) in Daniel M. There is no ambiguity in section 631: The minor must be released from custody unless a petition has been filed within 48 hours after the juvenile is detained, excluding nonjudicial days. The minor was arrested at 1 a.m. on Monday morning February 24, 1997, a judicial day.[5] February 25 was also a judicial day. Therefore, the petition had to be filed no later than 1 a.m. by Wednesday morning, February 26. As the courts are not usually open past 5 p.m. each evening, that meant, practically speaking, the petition should have been filed *1404 by 5 p.m. on Tuesday, February 25. In other words, the respondent had two complete court days to file the proper documents. It failed to do so.
Respondent argues that strict construction of section 631 would violate public policy and the purpose of juvenile law, relying on Los Angeles County Dept. of Children's Services v. Superior Court (1988) 200 Cal. App.3d 505 [246 Cal. Rptr. 150]. Citing the doctrine of parens patriae, and the case of Alfredo A. v. Superior Court (1994) 6 Cal.4th 1212 [26 Cal. Rptr.2d 623, 865 P.2d 56], respondent also contends that the trial court's probable cause determination, made within 72 hours of petitioner's arrest and within the time limits of section 632,[6] was reasonable and appropriate to continue the detention. In a related argument, respondent urges that an eight-hour delay in filing was not prejudicial to petitioner, or a significant violation of section 631.
Were we to agree with respondent, we would effectively write section 631 out of existence. If the Legislature had intended that noncourt hours be excluded from the formula, they could have easily drafted the statute to read "within 48 hours, excluding nonjudicial days and noncourt hours...."
Reliance on Alfredo A. is also misplaced. Alfredo A. is not inconsistent with juvenile law. Alfredo A. requires a probable cause hearing to continue detention of the juvenile where the 48-hour time period terminates during a nonjudicial day and more than 72 hours passes before a petition can be filed. If the petition is then timely filed, section 632 requires a detention hearing within one day; for example, after an arrest at 1 a.m. on a Thursday morning.
Respondent also relies upon Los Angeles County Dept. of Children's Services v. Superior Court, supra, 200 Cal. App.3d 505. There, the court interpreted sections 313 and 315 in the context of a dependency situation. An infant was removed from his parents' custody following allegations of parental abuse and the discovery of cocaine in the infant's blood, but no petition to declare him a dependent child was filed within 48 hours of removal. The trial court released the infant into his parents' custody due to the delay in the filing of the petition. (200 Cal. App.3d at pp. 507-508.)
*1405 The reviewing court concluded that the trial court erred, reasoning thus: "Section 313 governs the situation in which the minor has been detained over 48 hours and no petition has been filed. Under such circumstances, by hypothesis, no court case is pending. The command of the statute is, therefore, directed not to a judicial officer, but only to the officer or agency maintaining temporary nonjudicial detention of the minor. If no petition has been filed, the agency is required to release the minor after 48 hours. That command can be enforced by habeas corpus or other appropriate judicial remedy. [¶] Section 313 does not, however, prohibit continued detention of a minor after a petition has been filed. In particular, it does not say a detention hearing cannot be held if the minor was kept in custody over 48 hours before the petition was filed. Once the petition is filed, the controlling statute is section 315.... This provision, unlike section 313, is directed to the juvenile court. It requires, in mandatory language, the holding of a detention hearing." (Los Angeles County Dept. of Children's Services v. Superior Court, supra, 200 Cal. App.3d at pp. 508-509, italics added, fn. omitted.) In view of this conclusion, the court held that then effective rule 1331(a), which restated the content of section 313 but was impliedly directed to the trial court in virtue of its status as a rule of court, was "inconsistent with the statutory scheme." (200 Cal. App.3d at p. 508, fn. 5.)
The reviewing court also concluded that its interpretation of the statutory language was consistent with juvenile court law, reasoning that releasing the infant into his parents' custody was the "least appropriate remedy for the department's violation of section 313" because it amounted to "punishing the minor by depriving him of the opportunity for judicial protection of his safety and health." (Los Angeles County Dept. of Children's Services v. Superior Court, supra, 200 Cal. App.3d at p. 509, fn. omitted.) The court stated: "The provisions of the Juvenile Court Law were not written to provide the rulebook for a new game of tactics and sanctions. The trial court seemingly assumed that detention pending the jurisdiction hearing is a combat pitting the department, on the one side, against the parents and the minor, on the other. Detention is against the wishes of the parents, but it cannot be assumed to be adverse to the interests of the newborn. It was error to `reward' [the infant] with release from custody and thus `save' him from facing a statutory detention hearing." (Ibid., fn. omitted.)
The resulting rule to be derived from this case can best be described by the phrase utilized by Chick Hearn, announcer of the Los Angeles Lakers basketball team: "No harm, no foul." While that concept is embodied within the constitutional concept of harmless error, we believe it has no application where it effectively defeats a legislative mandate. The only mention of Robin M. in the opinion is in a footnote: "It is thus unnecessary to decide whether *1406 the petition should have been filed at the opening of court, or by 9 a.m., or by the end of the court day on Monday, March 8. (Cf. In re Robin M. ...)" (Los Angeles County Dept. of Children's Services v. Superior Court, supra, 200 Cal. App.3d at p. 508, fn. 4.) We have no idea what this terse reference means. Further, as suggested in Los Angeles County Dept. of Children's Services v. Superior Court, petitioner in this case requested his release at his first appearance before the court. We conclude that Los Angeles County Dept. of Children's Services v. Superior Court has no precedential value in the situation presented here.

DISPOSITION
Since petitioner is no longer subject to the unlawful detention, the order to show cause has served its purpose and is discharged. The writ of habeas corpus is denied.
Aranda, J.,[*] concurred.
BARON, J.
I dissent. In my view, Los Angeles County Dept. of Children's Services v. Superior Court (1988) 200 Cal. App.3d 505 [246 Cal. Rptr. 150], is dispositive on the issues before us.
In Los Angeles County Dept., as here, the key question was whether the statutory directive requiring a child's release if no petition is filed within 48 hours is aimed at the juvenile court or the agency holding the child. Following the enactment of Welfare and Institutions Code sections 631 and 632 in 1961 (see Stats. 1961, ch. 1616, § 2, p. 3475), the Legislature enacted Welfare and Institutions Code sections 313 and 315, which are parallel provisions concerning dependent children that use essentially similar language. (See Stats. 1976, ch. 1068, § 7, pp. 4762-4763.)[1]
The court in Los Angeles County Dept. interpreted Welfare and Institutions Code sections 313 and 315 in the context of a factual situation closely *1407 resembling the circumstances of this case. The court concluded that subdivision (a) of section 313, by its plain language, was aimed at the agency holding the child, reasoning that the juvenile court could not be directed to release a minor "within 48 hours after having been taken into custody, excluding nonjudicial days" when no petition had then been filed and no action was pending before the juvenile court. (Los Angeles County Dept. of Children's Services v. Superior Court, supra, 200 Cal. App.3d at p. 508, italics added.) The court also reasoned that the contrary conclusion would frustrate the purposes underlying juvenile court law because releasing a child after a failure to file a timely petition amounted to "punishing the minor by depriving him of the opportunity for judicial protection of his safety and health." (See Los Angeles County Dept. of Children's Services v. Superior Court, supra, at p. 509, fn. omitted.) Warning against views that would impose a rigid adversarial framework on juvenile law, the court observed that "[d]etention is against the wishes of the parents, but it cannot be assumed to be adverse to the interests of the newborn. It was error to `reward' [the child] with release from custody and thus `save' him from facing a statutory detention hearing." (Ibid., fn. omitted.)
The Los Angeles County Dept. court's construction of the pertinent statutory language is persuasive and consistent with the purposes underlying Welfare and Institutions Code sections 631 and 632. Juvenile court law concerning dependent and delinquent children is subject to the same policy goals, namely, "to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court and to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public." (Welf. & Inst. Code, § 202, subd. (a).) Although delinquent children, unlike dependent children, may receive "guidance ... which holds them accountable for their behavior," including punishment, such guidance must be consistent with their best interest and rehabilitative objectives. (See § 202, subd. (b).)
Thus, here, as in Los Angeles County Dept., the least appropriate remedy for a violation of Welfare and Institutions Code section 631, subdivision (a), would have been petitioner's release from custody by the juvenile court without a detention hearing. This would have effectively punished the minor and the public alike by depriving the minor of an opportunity for rehabilitation efforts under judicial supervision. To paraphrase the Los Angeles County Dept. court, detention may have been against petitioner's or his parents' wishes, but it cannot be assumed to be against his own best interest. *1408 There is evidence that petitioner had a poor relationship with his mother, had run away from home, was living on the streets, and had had at least one brush with the law prior to his arrest on February 26, 1997. At the detention hearing, the juvenile court concluded that releasing petitioner was contrary to his own interests and the interest of the community. Thus, releasing petitioner without a detention hearing would have simply returned him to the unsettled environment that endangered his well-being and the community's safety, and engendered his arrests.
My conclusion receives additional support from the fact that the Legislature amended and rewrote Welfare and Institutions Code sections 631 and 632 after the decision in Los Angeles County Dept., but did not alter the pertinent statutory language. "When legislation has been judicially construed and a subsequent statute on a similar subject uses identical or substantially similar language, the usual presumption is that the Legislature intended the same construction, unless a contrary intent clearly appears. [Citations.]" (In re Jerry R. (1994) 29 Cal. App.4th 1432, 1437 [35 Cal. Rptr.2d 155]; see Malcolm v. Superior Court (1981) 29 Cal.3d 518, 527-528 [174 Cal. Rptr. 694, 629 P.2d 495]; Los Angeles Met. Transit Authority v. Brotherhood of Railroad Trainmen (1960) 54 Cal.2d 684, 688-689 [8 Cal. Rptr. 1, 355 P.2d 905].) In 1989, the Legislature amended subdivision (b) of section 631 and rewrote section 632, but retained the language interpreted by the Los Angeles County Dept. court in the revised statutes. (See Stats. 1989, ch. 686, §§ 1, 2, pp. 2255-2256.)
The majority concludes that failure to file the petition within 48 hours mandates release by the juvenile court under Welfare and Institutions Code section 631, citing dicta from In re Robin M. (1978) 21 Cal.3d 337 [146 Cal. Rptr. 352, 579 P.2d 1], and the holding in In re Daniel M. (1996) 47 Cal. App.4th 1151 [55 Cal. Rptr.2d 17].
The dicta from Robin M. is not persuasive for two reasons. First, a dictum of the Supreme Court "`... while not controlling authority, carries persuasive weight and should be followed where it demonstrates a thorough analysis of the issue or reflects compelling logic. [Citations.]'" (Grange Debris Box & Wrecking Co. v. Superior Court (1993) 16 Cal. App.4th 1349, 1358 [20 Cal. Rptr.2d 515].) Because the issue decided by the Robin M. court concerned a postpetition time limit, however, the court's reasoning on that issue does not touch the key question resolved in Los Angeles County Dept., namely, whether the directive in Welfare and Institutions Code section 631, subdivision (a), is addressed to the juvenile court or the agency detaining a minor.
Second, the analysis of the legislative purpose underlying the statutory time limits in Robin M. predates Alfredo A. v. Superior Court (1994) 6 *1409 Cal.4th 1212 [26 Cal. Rptr.2d 623, 865 P.2d 56], in which the court held, on constitutional grounds, that a detention hearing under section 632, subdivision (a), or equivalent determination of probable cause, must be held within 72 hours of the juvenile's arrest, regardless of intervening "`nonjudicial'" days.[2] (See Alfredo A. v. Superior Court, supra, 6 Cal.4th at p. 1232.) In view of Alfredo A., the Los Angeles County Dept. court's construction of the language found in Welfare and Institutions Code sections 631 and 632 best harmonizes the language itself with the legislative concerns underlying those sections, that is, protecting the minor and the community while eliminating excessive or unwarranted detentions.
Daniel M. did not reach the key issue before us. In Daniel M., the court concluded that the juvenile court should have released a minor when a supplemental petition under Welfare and Institutions Code section 777, subdivision (a), was not filed within 48 hours of the minor's arrest, citing California Rules of Court, rule 1470(a). (See In re Daniel M., supra, 47 Cal. App.4th at pp. 1154-1157.) However, the court in Daniel M. did not interpret section 631, subdivision (a), which underlies rule 1470(a). (See 47 Cal. App.4th at pp. 1154-1157.) Although the Daniel M. court stressed the need for strict statutory construction in these matters, it did not explain how the plain language of section 631 can be reconciled with rule 1470(a), which is impliedly directed at the juvenile court by virtue of its status as a rule of court. (See 47 Cal. App.4th at p. 1156.) For the reasons cited above, I believe that subdivision (a) of section 631 is not directed at the juvenile court, and thus rule 1470(a) is inconsistent with the statutory scheme. (Cf. Los Angeles County Dept. of Children's Services v. Superior Court, supra, 200 Cal. App.3d at p. 508, fn. 5.)
In sum, I would affirm the juvenile court's order and deny the petition for writ of habeas corpus.
NOTES
[1] Unless specifically indicated otherwise, all further references to code sections are to the Welfare and Institutions Code, and all further references to rules are to the California Rules of Court.
[2] When this petition for writ of habeas corpus was initially filed, and after receipt of preliminary opposition, we issued an order to show cause directing that petitioner be released. Our order expressly states that petitioner's release does not render the petition moot or remove our jurisdiction to resolve this important issue of law which is likely to recur as to other minors. (In re Robin M. (1978) 21 Cal.3d 337, 341, fn. 6 [146 Cal. Rptr. 352, 579 P.2d 1].)
[3] Section 602 provides in pertinent part that "[a]ny person who is under the age of 18 years when he violates any law of this state ... defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."
[4] While not necessary to the decision, footnote 11 of Robin M. also notes that section 631 had been violated: "The record in the present case shows a patent violation of this 48-hour requirement of section 631. The report of the special study commission makes clear that the 48-hour period starts to run from the moment the minor is first taken into temporary custody by the arresting peace officer, not from the time the minor is received by the probation officer at juvenile hall. (Commission Report, pt. II, at pp. 106-107.) Since the initial petition in this case was not filed within 48 hours of his arrest ..., petitioner should have been released before his first detention hearing or, if the defect had not been discovered earlier, at that hearing. [¶] While there is an exception to this 48-hour requirement in cases where the minor `willfully misrepresents himself to be 18 or more years of age when taken into custody' (§§ 631, subd. (a); 631.1), there is no suggestion in the record that this exception was involved here." (21 Cal.3d at p. 344, fn. 11.)
[5] Government Code section 6806 states: "A day is the period of time between any midnight and the midnight following."
[6] Section 632, subdivision (a) provides that "unless sooner released, a minor taken into custody under the provisions of this article shall, as soon as possible but in any event before the expiration of the next judicial day after a petition to declare the minor a ward or dependent child has been filed, be brought before a judge or referee of the juvenile court for a hearing to determine whether the minor shall be further detained. Such a hearing shall be referred to as a `detention hearing.'" Finally, subdivision (c) of section 632 provides that "[i]f the minor is not brought before a judge or referee of the juvenile court within the period prescribed by this section, he or she shall be released from custody." California Rules of Court, rule 1471(b) provides that when a child has been alleged to have committed a felony, "[a] detention hearing must be commenced as soon as possible, but no later than the expiration of the next judicial day after the petition has been filed...."
[*] Judge of the Municipal Court for the South Bay Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] Welfare and Institutions Code section 313, subdivision (a), then, as now, provides: "Whenever a minor is taken into custody by a peace officer or probation officer ... such minor shall be released within 48 hours after having been taken into custody, excluding nonjudicial days, unless within said period of time a petition to declare him a dependent child has been filed pursuant to the provisions of this chapter." (See Los Angeles County Dept. of Children's Services v. Superior Court, supra, 200 Cal. App.3d at p. 507, fn. 3.)

Welfare and Institutions Code section 315 then, as now, provides: "If a minor has been taken into custody under this article and not released to a parent or guardian, the juvenile court shall hold a hearing (which shall be referred to as a `detention hearing') to determine whether the minor shall be further detained. This hearing shall be held as soon as possible, but in any event before the expiration of the next judicial day after a petition to declare the minor a dependent child has been filed. If the hearing is not held within the period prescribed by this section, the minor shall be released from custody." (See Los Angeles County Dept. of Children's Services v. Superior Court, supra, 200 Cal. App.3d at p. 508.)
[2] Petitioner concedes for the purposes of his petition that in the present case, a proper determination was made pursuant to Alfredo A.