Filed 6/16/15  P. v. Young CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>ROSS YOUNG,<br><br>        Defendant and Appellant. | B258505<br><br>(Los Angeles County<br>Super. Ct. No. BA387051) |

        APPEAL from an order of the Superior Court of Los Angeles County, Clifford L. Klein, Judge.  Affirmed.

        Robert Booher, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Chung L. Mar and Jessica C. Owen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In November 2012, Ross Young pleaded no contest to one count of second degree robbery pursuant to a negotiated agreement. Imposition of sentence was suspended, and Young was placed on three years probation. In 2014, Young's probation was revoked after he was found in possession of a handgun and oxycodone; and he was sentenced to three years in state prison. Young appeals from the order revoking probation, contending the trial court failed to employ the proper standard of proof to determine whether he had violated the conditions of his probation. Although the trial court erred, the error was harmless, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

At the probation violation hearing, Los Angeles County Sheriff's Deputy Ryan Walker testified that he and his partner initiated a traffic stop of Young, who was driving a car registered to Christina Perodin. There were two male passengers in the car. Young admitted to the deputies that he did not have a valid driver's license and was currently on probation. During a search of the car, the deputies found a clear plastic bag, containing 10 to 11 oxycodone pills, in the center console of the passenger compartment and a round of live ammunition inside a tennis shoe in the trunk. Young acknowledged that he had no prescription for the oxycodone pills.

The deputies detained Young and decided to conduct a probation compliance check of his residence. When they arrived at the residence, Young told the deputies that his bedroom was a converted porch with a door at the front of the house. Inside the bedroom, the deputies found a loaded .380-caliber semiautomatic handgun inside a knitted glove sitting on top of a potted plant near the entrance.[1]

---

[1] The bullet recovered from the trunk was not for a .380-caliber semiautomatic handgun.

2

Young did not testify in his defense; he called two witnesses at the probation violation hearing. Melissa Young (Melissa)[2], Young's aunt, owned the house where Young lived. Melissa testified that the oxycodone pills belonged to Perodin, Young's finance, who had been prescribed the drug.[3] Melissa also testified that the handgun had been found weeks earlier in Nickerson Gardens by another nephew, Emmanuel Moore.

Emmanuel Moore testified as a defense witness. According to Moore, to enter Melissa's house from the front, it is necessary to go through the door to Young's bedroom. As a result, Moore testified, many people travel through Young's bedroom. Moore denied having told Melissa the gun was his or having hidden the gun. Moore testified that he had never known Young to have a gun.

### c. *Counsels' Argument and Trial Court's Findings*

The prosecutor argued the recovery of the handgun in Young's room and the oxycodone in a car Young was driving established he was in possession of both items in violation of his probation. Defense counsel argued that, by relying solely on where the gun and oxycodone were found, the People failed to prove by a preponderance of the evidence that Young either owned or possessed them.

When counsel concluded their arguments, the trial court stated, "The burden is strong suspicion or more likely than not." The court then observed to be persuaded by the defense argument, it would have to believe Young was "just extremely unlucky." The court discounted Melissa's testimony as not credible and concluded, "I believe that there is a strong suspicion that Mr. Young is in violation of probation."

---

**2**    Because Young and his aunt, Melissa Young, share the same surname, to avoid confusion, we refer to Melissa Young by her first name. (See *People v. Jones* (1996) 13 Cal.4th 535, 538, fn. 2.)

**3**    The defense introduced into evidence an empty pill bottle with a prescription in the name of Parodin for oxycodine.

## DISCUSSION

Young is not challenging the sufficiency of the evidence to support the trial court's finding that he violated the conditions of his probation. Instead, Young contends the court abused its discretion and violated his due process rights by improperly using the lower strong suspicion or probable cause standard applicable at a preliminary hearing to hold a defendant to answer (see *Galindo v. Superior Court* (2010) 50 Cal.4th 1, 6), rather than the preponderance of the evidence standard appropriate for a probation violation hearing (see *People v. O'Connell* (2003) 107 Cal.App.4th 1062, 1066).

"Ordinarily statements made by the trial court as to its reasoning are not reviewable. An exception to this general rule exists when the court's comments unambiguously disclose that its basic ruling embodied or was based on a misunderstanding of the relevant law." (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1440, citing *People v. Butcher* (1986) 185 Cal.App.3d 929, 936-937.) Appellate courts in criminal cases may "consider a judge's statements when, taken as a whole, the judge's statement discloses an incorrect rather than a correct concept of the relevant law, 'embodied not merely in "secondary remarks" but in [the judge's] basic ruling.'" (*People v. Tessman* (2014) 223 Cal.App.4th 1293, 1303 (*Tessman*).)

The record in this case demonstrates the trial court failed to apply the proper standard of proof in making its ruling. Immediately following counsels' arguments, the court announced the applicable standard of proof was "a strong suspicion" or "more likely than not," and ultimately based its ruling on "a strong suspicion" that Young had violated his probation. Thus, the court conflated two different standards of proof: The preponderance of the evidence standard, by which a fact is proved, if "it is more likely than not that the fact is true," (CALCRIM No. 375) and the probable cause standard, which signifies a lower standard of proof. The probable cause standard "refers to a state of facts as would lead a man of ordinary caution and prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1189.) In criminal proceedings, probable cause embodies a lower standard of proof than beyond a reasonable doubt, a preponderance of

4

the evidence and a prima facie showing.  (*People v. Tuadles* (1992) 7 Cal.App.4th 1777, 1783, citing *Illinois v. Gates* (1983) 462 U.S. 213, 232, 235.)

The People's reliance on *Tessman*, *supra*, 223 Cal.App.4th 1293, *People v. Sangani* (1994) 22 Cal.App.4th 1120 and *Ross v. Superior Court* (1977) 19 Cal.3d 899 to argue the trial court correctly employed the preponderance of evidence standard is not persuasive.  In *Tessman*, the defendant stole jewelry from two victims and was charged with commercial burglary after selling some of the stolen jewelry to a pawn shop.  (*Tessman, supra*, 223 Cal.App.4th at pp. 1296-1297.)  Following a bench trial, the court found the defendant guilty, reasoning in part the defendant knew or reasonably should have known the pawned jewelry was stolen.  (*Id.* at p. 1301.)  On appeal, the *Tessman* court held, in the context of the trial court's "entire statement of decision," its erroneous reference to what the defendant should have known was merely a "slip of the tongue" or a secondary remark.  (*Id.* at p. 1304.)  The appellate court explained because the trial court had clearly determined elsewhere in its statement of decision the defendant had stolen the victims' jewelry, the misstatement did not reflect its "actual conclusions or reasoning."  (*Ibid.*)

In *Sangani*, the defendants were convicted following a bench trial with dumping and recklessly storing hazardous waste.  (*Sangani*, *supra*, 22 Cal.App.4th 1138.)  On appeal, one of the defendants contended the trial court applied an improper standard in holding him personally liable for the illegal conduct because the People misstated the standard during argument.  (*Ibid.*)  In rejecting this claim, the *Sangani* court noted the defendant had not pointed to a single statement by the trial court which suggested it had applied the wrong standard.  (*Ibid.*)

In *Ross,* the trial court did not state it was applying the beyond the reasonable doubt standard of proof in finding the defendants guilty of contempt for violating a court order.  (*Ross*, *supra,* 19 Cal.3d at pp. 902-905.)  On appeal, the defendants argued in the absence of an affirmative showing the trial court had employed the correct standard of proof, error must be presumed.  (*Id.* at p. 913.)  The California Supreme Court determined nothing in the record indicated the trial court was unaware of, or had decided

5

to depart from, its obligation to apply the reasonable doubt standard. (*Ross, supra*, 19 Cal.3d at p. 915.) Furthermore, the trial court had characterized the contempt proceedings as quasi-criminal to the parties at one point. (*Ibid.*)

Here, unlike Tessman, Sangani and Ross, nothing in the record suggests that the trial court actually applied the preponderance of evidence standard and that its misstatement of the proper standard of proof was merely a slip of the tongue or a secondary remark. Indeed, the court's oral pronouncement plainly and unequivocally shows the court erroneously based its ruling on the probable cause standard.

Although the trial court erred in this case, the error was not prejudicial. Penal Code section 1203.2, subdivision (a) authorizes a court to revoke and terminate "probation if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his or her probation, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless whether he or she has been prosecuted for such offenses." Among the conditions of Young's probation were that he obey all laws and not possess any deadly or dangerous weapons, "including firearms, knives or other concealable weapons."

There was substantial evidence presented by the prosecutor that Young possessed a handgun and oxycodone, which violated the conditions of his probation. Furthermore, the record shows the trial court disbelieved the testimony of the defense witnesses. Thus, while the court improperly relied on the wrong standard of proof at the revocation hearing, in light of the People's evidence and the trial court's credibility determinations, the error was plainly harmless, whether viewed through the prism of federal constitutional law (*Chapman v. California* (1967) 386 U.S. 18, 24) or state law (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

## DISPOSITION

The order revoking probation is affirmed.


                                          ZELON, J.



We concur:



PERLUSS, P. J.



STROBEL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.