Filed 11/29/23  P. v. Robles CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079676 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD284788) |
| ZEUS ROBLES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Frederic L. Link, Judge.  Reversed in part and affirmed in part.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

In November 2019, Appellant Zeus Robles pointed a handgun at an acquaintance, A.A., in a Motel 6 hallway.  He then struck A.A. on the head

with the gun, at which point the gun simultaneously discharged. A bullet passed through the door of a nearby room, becoming lodged in an adjacent wall. Robles fled down the hall. Two motel security cameras captured the entire incident.

The San Diego County District Attorney charged Robles with assault with a deadly weapon (Pen. Code,[1] § 245, subd. (b); count 1), residential burglary (§ 459; count 2), shooting at an inhabited dwelling (§ 246; count 3), and two counts of illegal possession of a firearm (§ 29800, subd. (a)(1); counts 4 and 5). A jury acquitted Robles on count 2 but convicted him on the four remaining counts. The jury also found true the allegation that Robles personally used a firearm in the commission of count 1 (§ 12022.5, subd. (a)). Robles admitted that he had a prior conviction that was a serious and/or violent felony (§§ 1192.7, subd. (c); 667.5, subd. (c)), and that he committed the instant offenses while serving a parole term following a prior conviction for a violent felony within the meaning of section 667.5, subdivision (c) (§§ 1203.085, subd. (a); 3000).

The trial court sentenced Robles to an aggregate term of 32 years and eight months consisting of a term of 18 years on count 1 (the upper term doubled), the upper term of 10 years for the firearm enhancement, a consecutive term of three years and four months on count 3 (one-third the mid-term doubled), and a consecutive term of one year and four months on count 5 (one-third the midterm doubled). The trial court stayed the term on count 4 (§ 654) and struck the enhancement term for Robles's prior serious felony conviction (§ 1385, subd. (b)(1)).

Robles raises four contentions of error on appeal. First, he argues the record lacks legally sufficient evidence to support his conviction for shooting

---

1    Statutory references are to the Penal Code.

at an inhabited dwelling.  Second, he contends he is entitled to resentencing under section 1170, subdivision (b)(2) because the trial court selected the upper term for count 1 and for the personal use of a firearm enhancement without a jury finding or stipulation.  Third, he submits that his conviction on count 5 must be reversed because the crimes charged in counts 4 and 5 constituted one continuous offense.  Finally, Robles argues he was prejudiced by the trial court's breach of its duty to correctly and adequately answer the jury's question regarding negligent discharge of a firearm.  As an alternative basis for reversing count 3 on his fourth claim for relief, he asserts he was denied his Sixth Amendment right to counsel because his attorney did not request CALCRIM No. 3404 on accidental discharge of a firearm.

The People concede that recent legislative changes to section 1170 apply to Robles, although they dispute that remand is necessary.  They also concede that count 5 does not constitute a discrete offense and that Robles's sentence and abstract of judgment must be modified accordingly.

We conclude Robles's conviction on count 3 is not supported by substantial evidence and, therefore, reverse as to that count.  We further conclude that count 5 must be reversed because counts 4 and 5 are based on the same, continuous offense.  Although we agree Robles is eligible for resentencing under the current version of section 1170, because our reversal of count 5 warrants remand for resentencing under the full resentencing rule, we need not further address this claim.  In all other respects, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Police officers responding to reports of gunfire at a Motel 6 on November 25, 2019, discovered an unspent nine-millimeter bullet cartridge on the floor outside room 306 and a bullet hole above the peephole on the door

3

of room 303. They subsequently located a hole in the wall inside room 303 and a spent shell casing lodged in the other side of the wall.[2]

The officers obtained surveillance video footage depicting views from each end of the third-floor hallway, and this footage was later played for the jury. The video shows Robles walking down the hall with a bottle in his hand and a handgun in the back, right waistband of his pants. He enters a room, and then comes out a few minutes later with the bottle in his right hand and two other items in his left hand. As he approaches A.A. and two other men who are walking towards him from the opposite end of the hall, he sets down the bottle and other items and pulls the gun from his waistband with his right hand. He points the gun at A.A. and then shoves A.A. against the door of room 303. At 12:21:04 a.m., Robles strikes A.A. on the back side of his head with the gun. The videos do not contain sound, but at the moment of impact, the camera shakes and one of the other men in the hall ducks his head down and starts to run away. Robles then raises the gun again as he backs away and points it at A.A. before putting it back in his waistband. He turns briefly to glance at his belongings on the floor behind him, then turns back, and appears to say something to A.A. as he passes by him. At 12:21:10 a.m. Robles takes off running down the hall. A.A. and the other man then turn and slowly walk in the opposite direction, stopping to pick up Robles's bottle and other belongings on the way.

On January 15, 2020, police officers arrested Robles in a room at a Best Western hotel. They found a black, semiautomatic firearm in the water reservoir of the room's toilet tank, which was later determined to be of the same caliber, design, and color as the handgun depicted in the motel surveillance videos. The weapon's magazine held 16 nine-millimeter rounds,

---

2    The parties do not dispute that room 303 was occupied by two people.

and the officer who located it reported that 14 rounds remained.  Megan B., who was in the Best Western hotel room with Robles, told an officer it was Robles's gun.

DISCUSSION

I.

*Robles's Conviction for Shooting at an Inhabited Dwelling is Not Supported by Sufficient Evidence*

Robles contends substantial evidence does not support the jury's finding that he willfully discharged a firearm in an inhabited dwelling because the evidence shows the firearm discharge was unintentional.  This is one of the very rare occasions where we agree the prosecution did not present evidence of sufficiently "reasonable, credible, and . . . solid value" on the element of willfulness, "such that a reasonable trier of fact could find [Robles] guilty beyond a reasonable doubt."  (*People v. Johnson* (1980) 26 Cal.3d 557, 578 (*Johnson*).)

A.     *Additional Facts*

At trial, the People called an armorist to testify regarding her analysis of the gun found in the toilet tank and the bullet removed from the motel wall.  She explained that the gun had a trigger safety that prevented the trigger from being pulled if you "snag th[e] trigger and just catch the side of it."  To pull the trigger down, she said the operator would have to fully cover the whole trigger and pull the trigger safety spring down flush with the trigger.  She had not measured the amount of force required to pull back the trigger of the gun found in the toilet tank but said it had "an average trigger pull" and estimated it required between seven to ten pounds of pressure to depress the trigger.  Her testing indicated that the weapon operated as designed and did not appear to have any mechanical issues.

5

Defense counsel then posed two hypothetical questions to her. First, he asked, "if an individual is holding a semiautomatic firearm, and they have their hand on the trigger, and they—that individual hits another person with their hand while holding the firearm, is it possible that the firearm were [*sic*] to discharge?" She responded, "If the person's finger or something is covering the trigger and that strike causes them—if during that strike, they squeeze hard enough to overcome that trigger pull we talked about, then, yes, it could fire rounds." Counsel then inquired, "Now being more specific to the specific firearm that you showed the jury, could the same hypothetical with an individual holding a weapon with their finger on the trigger, this very specific weapon, and strike someone could it discharge?" The armorist answered, "Yes. As long as they were covering that trigger safety that we were talking about. As long as that's covered completely, if—any time you squeeze, if you cover that trigger safety and squeeze hard enough, then it will go off. Regardless of whether you're cleaning or hitting or whatever you're doing. If you squeeze that trigger hard enough and cover that trigger safety, it can fire." The prosecutor did not respond to this testimony on redirect.

In her closing argument, the prosecutor argued that the evidence showed Robles "intentionally shot that gun" because (1) Robles had his finger on the trigger when he hit the victim in the head, and (2) the armorist explained that the "gun will not shoot unless you put a certain amount of pressure on that trigger and manage to avoid hitting the trigger guard." The prosecutor also noted in relationship to the jury instruction regarding consciousness of guilt that "immediately after the assault on [A.A.], you see [Robles] running out. He doesn't walk away. He is booking it."

In response, defense counsel pointed out that the armorist's testimony showed that a person could strike someone with the gun and have it go off

6

accidentally.  The prosecutor countered that it was not an accident because, after the gun went off, Robles had "no reaction of surprise or concern or shock or alarm."  Instead, he took a shooting stance again.  She argued that "[i]f you're the guy who has a finger on the trigger and you don't mean to do that, you run, you stop, you drop the gun, you do anything but wind up and immediately take a shooting stance again.  And the reason that [Robles] does that on the video is because he intended every single step of what he did that night."

B.    *Legal Standard*

In considering a challenge to the sufficiency of the evidence, "we must 'examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt.' " (*People v. San Nicolas* (2004) 34 Cal.4th 614, 657–658 (*San Nicolas*).)  We do not substitute our own factual determinations for the factfinder's (*People v. Koontz* (2002) 27 Cal.4th 1041, 1078) as " '[r]esolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.' " (*People v. Brown* (2014) 59 Cal.4th 86, 106.)

"The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citations.]  The same standard applies when the conviction rests primarily on circumstantial evidence.  [Citation.]  Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt.  [Citation.] ' "If the circumstances reasonably

7

justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citation.]" ' " (*People v. Kraft* (2000) 23 Cal.4th 978, 1053–1054.)

C.    *Analysis*

The jury convicted Robles under section 246, which states that "[a]ny person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house, [or] occupied building . . . is guilty of a felony." (§ 246.) The parties do not dispute that the Motel 6 was occupied, and Robles does not challenge the evidence supporting malicious discharge. Therefore, the question on appeal is whether sufficient evidence supports the jury's finding that Robles fired his gun willfully.

As the prosecutor acknowledged in her closing argument, to demonstrate willfulness, she had to prove that Robles intentionally fired the gun. The Penal Code defines the word "willfully" as requiring "a purpose or willingness to commit the act" (§ 7, subd. (1)) and "it is well settled that the terms 'willful' or 'willfully,' when applied in a penal statute, require only that the illegal act or omission occur 'intentionally,' without regard to motive or ignorance of the act's prohibited character." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 396.) In other words, willfulness " ' " 'implies that the person knows what he is doing, intends to do what he is doing and is a free agent.' [Citation.]" ' " (*People v. Atkins* (2001) 25 Cal.4th 76, 85; *In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1438 (*Jerry R.*).)

The prosecution presented no affirmative evidence in this case to demonstrate that Robles intentionally discharged the gun. At most, it called upon the jury to infer that, because the gun went off and Robles did not react and immediately flee, the discharge must have been intentional.

8

It is true that the jury can make inferences and, if the inferences are reasonable, we must affirm the judgment even if we might have concluded otherwise. (*People v. Salazar* (2016) 63 Cal.4th 214, 242; *People v. Campbell* (2020) 51 Cal.App.5th 463, 484.) But this is not a situation where we merely disagree. Rather, there simply is no evidence of reasonable, credible, and solid value to support an inference, beyond a reasonable doubt, that Robles acted intentionally. (*San Nicolas*, *supra*, 34 Cal.4th at pp. 657–658.) The videos the prosecution relied upon show an *instantaneous* discharge when the gun was used as a club to strike the victim, and no other witnesses to the incident provided evidence suggesting that Robles separately and willfully fired the gun. While the People attempt to rely on the armorist's testimony, she did not provide evidence specifically directed to the shooter's intent. To the contrary, she merely stated that the gun would discharge when the trigger was pressed in the center with sufficient pressure, and she made clear that the weapon could indeed discharge accidentally when used to strike something or even while doing a mundane task such as cleaning the weapon. At no point did the prosecution elicit any testimony from the armorist suggesting that something about the circumstances in this case demonstrated that this was *not* such an accidental discharge. Nor did the People provide any other evidence on appeal showing that Robles intended to shoot the gun in addition to using it to strike the victim on the head.

As other cases have acknowledged, a defendant may be found to lack the required mental state when a gun discharges accidentally. For example, in *People v. Jones* (1991) 234 Cal.App.3d 1303, 1314, evidence showed the shotgun the defendant pointed at an officer only went off because the officer attempted to knock it aside. Under these circumstances, the court concluded the defense of accident was available because a reasonable juror could have

9

concluded the defendant did not intend to discharge the firearm.  (*Ibid.*)  In *People v. Garnett* (1908) 9 Cal.App. 194, 204, it was undisputed the defendant's gun discharged while he was engaged in a struggle with another man.  On an appeal challenging a jury instruction, the reviewing court concluded the jury was properly instructed that it would not have been murder if the victim was shot by an accidental discharge of the defendant's gun while the two were engaged in a struggle.[3]  (*Ibid.*)

Although the People make much of Robles's purported lack of reaction and delay in fleeing the scene, the video shows that from the time Robles struck the victim and the gun discharged to the time when he began running down the hall was only six seconds.  This short window of time included the brief instance when he raised the gun again as he backed away.  The prosecutor herself belied any inference of delay when she argued during her

---

3      Robles also relies on *Jerry R.*, *supra*, 29 Cal.App.4th 1432.  Although not on all fours, this case suggests the act of pulling the trigger may constitute an unintentional discharge if there is evidence the defendant did not intend to discharge the firearm.  In *Jerry R.*, a boy removed the clip from a pistol and pointed it at his friend with his finger on the trigger.  (*Id.* at p. 1435.)  He thought the gun was empty and testified that the gun went off when his friend bumped him.  (*Id.* at p. 1436.)  The bullet hit his friend in the chest.  (*Id.* at p. 1435.)  The trial court stated that it believed this was not a case of accidental discharge—that Jerry R. had pulled the trigger—and found Jerry R. guilty of grossly negligent discharge of a firearm (§ 246.3), which also requires proof of willfulness.  (*Id.* at p. 1436–1437.)  On appeal, the reviewing court concluded that "[p]roof of an intentional discharge of the firearm was required, and an honest belief that a gun is empty negatives the mental state of an intent to fire the gun." (*Id.* at p. 1440.)

Here, the argument is not that Robles intentionally pulled the trigger but did not intend the gun to discharge.  Instead, he contends there is no evidence he intended to even pull the trigger.  On these facts, although this case comes to us on a procedural posture more similar to *Jerry R.*, we find the accidental discharge cases discussed *ante* more persuasive.

10

closing statement that "immediately after the assault on [A.A.], you see [Robles] running out. He doesn't walk away. He is booking it." Robles's haste in departing is further demonstrated by his decision to abandon the items he left on the floor. Thus, this evidence is inconsistent with an inference that he delayed in fleeing.

Robles's poker face also is not sufficiently solid evidence to show beyond a reasonable doubt that he intentionally discharged the firearm. "Inferences may constitute substantial evidence, but they must be the product of logic and reason. Speculation or conjecture alone is not substantial evidence." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651 (*Roddenberry*); see also *Johnson*, *supra*, 26 Cal.3d at pp. 576–577 [in judging whether the evidence is substantial, " 'it is not enough for the respondent simply to point to "some" evidence supporting the finding, for "Not every surface conflict of evidence remains substantial in the light of other facts" ' "].) We are unaware of a case where a defendant's facial expression, without more, provided proof beyond a reasonable doubt of an element of a case, and the People to not direct us to any such authority.

Furthermore, the prosecutor's argument at trial focused on what a regular person might do when a firearm accidentally discharged. But in looking at the record as a whole (see *Johnson*, *supra*, 26 Cal.3d at pp. 576–577), we see that Robles was not an ordinary person facing this situation. The jury heard evidence that Robles had a prior felony conviction and owned the gun found in the toilet tank. He was trying to assert himself against three larger men. It is a logical stretch to infer that because a criminal familiar with guns who was in the process of hitting someone with a gun did not react in shock when the gun discharged, he must have intended

11

to shoot the weapon. We cannot in good conscience deem such conjecture substantial evidence to support a conviction.

In looking at the entire record, we also are guided by the fact that the jury itself appears to have questioned whether Robles acted willfully. The jury asked for "instructions/definition of a negligent discharge of firearm." Although grossly negligent discharge of a firearm (§ 246.3) is a lesser included offense of shooting at an inhabited building (§ 246; *People v. Ramirez* (2009) 45 Cal.4th 980, 990 (*Ramirez*)), the jury was not so instructed and there is no basis in the record to conclude it had any outside knowledge of the Penal Code (nor could they have relied on such).[4] The reasonable interpretation of this jury request then is that the jury intended the ordinary use of the term "negligent" that is synonymous with carelessness.[5] This interpretation also comports with the defense's theory that the gun discharged accidentally. In other words, the jury question suggests one or more jurors agreed with the defense's view of the evidence and were

---

4      It also does not stand to reason that the jury sought instruction on section 246.3 because the only differences between the offenses of willfully and negligently discharging a firearm are that: (1) the former requires a "high probability" of human death or personal injury while the latter requires only that injury or death "could result," and (2) willful discharge requires that the inhabited dwelling be within the defendant's firing range. (*Ramirez*, *supra*, 45 Cal.4th at p. 990.) Both crimes still require that the defendant willfully fired the gun. (*Ibid.*)

5      "Negligent," is defined, in relevant part, as "failing to exercise the care expected of a reasonably prudent person in like circumstances." (Merriam Webster's Collegiate Dict. (11th ed. 2003) p. 830, col. 1.)

requesting an instruction on firing by mistake, while acknowledging that it is negligent to strike someone in the head with a loaded gun.[6]

Ultimately, the prosecution had the burden of showing evidence of willfulness. And while it is true that reversal is warranted only if "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331), pure speculation does not equate with sufficient "substantial evidence." (*Roddenberry*, *supra*, 44 Cal.App.4th at p. 651; see also *People v. Hughes* (2002) 27 Cal.4th 287, 365 ["We recognize, as defendant asserts, that a jury may not rely upon unreasonable inferences, and that '[a]n inference is not reasonable if it is based only on speculation' "].) In this case, the evidence the People put forth is inconsistent with the later drawn inference and required the jury to speculate as to Robles's mental state. This is not sufficient to support a conviction. Accordingly, we reverse as to count 3.

## II.

### *Remand for Resentencing is Required*

A.     *Continuing Possession of a Firearm Under Counts 4 and 5*

Robles was convicted under counts 4 and 5 of possession of a firearm by a person with a felony conviction (§ 29800, subd. (a)(1)) for possessing a handgun on November 25, 2019, and January 15, 2020. At trial, the prosecution proceeded under the theory that Robles used the same firearm on both dates. Because Robles contends this constitutes a continuing offense, he

---

6     Although the jury subsequently entered a guilty verdict on this count, it did so only after the trial court responded to their inquiry by instructing the jury, " [d]o not consider negligent discharge of a firearm." As Robles argues in a separate allegation of error, which we need not resolve here, the trial court's response to the jury's question may have effectively negated the defense of accidental discharge.

13

argues count 5 does not allege a discrete offense and the conviction, therefore, must be reversed. The People agree.

Section 29800, subdivision (a)(1) provides that "Any person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country, or of an offense enumerated in subdivision (a), (b), or (d) of Section 23515, or who is addicted to the use of any narcotic drug, and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony." In the applicable information, the prosecution charged Robles with two counts of being a felon in possession of "a firearm," but did not allege the offenses involved different firearms.

Section 954 permits a prosecutor to charge "two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts." (§ 954.) However, "[t]he most reasonable construction of the language in section 954 is that the statute authorizes multiple convictions for different or distinct offenses, but does not permit multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct." (*People v. Vidana* (2016) 1 Cal.5th 632, 650.) In other words, "if two alleged offenses are 'different statements of the same offense' (§ 954), both offenses may be charged based on the same act, but convictions for both cannot stand." (*People v. Aguayo* (2022) 13 Cal.5th 974, 979 (*Aguayo*).)

To the extent Robles challenges the trial court's interpretation of sections 29800 and 954 in allowing multiple convictions for being a felon in possession of the same firearm, we employ the de novo standard of review. (*People v. Villegas* (2012) 205 Cal.App.4th 642, 646.) The trial court's factual

14

determinations under section 954 are reviewed for substantial evidence. (*People v. Carter* (2019) 34 Cal.App.5th 831, 841.)

This court addressed virtually indistinguishable facts in *People v. Mason* (2014) 232 Cal.App.4th 355 (*Mason*). In that case, a jury convicted Mason of four counts of possession of a firearm by a felon. (*Id.* at p. 364.) Each count correlated to the date of a shooting or police chase, and the prosecution argued Mason possessed the same firearm on each of the specified dates. (*Ibid.*) In concluding that the evidence supported only one conviction for possession, we explained that "[t]he Supreme Court has recognized that possession of a firearm by a felon is a continuing offense." (*Id.* at p. 365 citing *Wright v. Superior Court* (1997) 15 Cal.4th 521, 525, fn. 1 and *People v. Warren* (1940) 16 Cal.2d 103, 112.) " 'Ordinarily, a continuing offense is marked by a continuing duty in the defendant to do an act which he fails to do. The offense continues as long as the duty persists, and there is a failure to perform that duty.' " (*Wright*, at p. 525.) In other words, " 'only one violation occurs even though the proscribed conduct may extend over [an] indefinite period.' " (*Mason*, at p. 365.) Because "there was no evidence that Mason's possession of the firearm was anything but continuous over the period encompassing the four dates," we concluded his "crime was complete at the time he first possessed the gun because he violated the duty imposed by the statute not to do so." (*Id.* at p. 366.) Accordingly, we reversed all but one of Mason's possession convictions for lack of evidence. (*Id.* at p. 367.)

Although the *Mason* court addressed former section 12021, subdivision (a)(1), it was subsequently repealed and recodified without substantive change as the provision addressed here, section 29800, subdivision (a)(1) (eff. Jan. 1, 2012). Accordingly, we are persuaded to adopt the same interpretation of section 29800 as a continuous offense.

15

Under this reading of the statute, Robles's possession of a firearm on two different occasions should be viewed as a continuation of the same offense unless he at some point relinquished possession of the weapon or, potentially, possessed a different weapon. Neither appears to be the case. Throughout the trial, the prosecution made clear its theory was that Robles possessed the same handgun on both dates. In his opening statement, the prosecutor told the jury that the gun retrieved from the Best Western "that Mr. Robles had dumped in that toilet tank so police wouldn't find it [¶] . . . . was a gun that Mr. Robles had on him during the incident at the Motel 6." She then presented the evidence discussed *ante* showing that the gun depicted in the videos was black with a "beavertail" design, as was the gun found in the toilet; that the bullets found in the Motel 6 were nine-millimeter, which was the same caliber as the gun retrieved from the Best Western; and that Robles's companion at the Best Western said that the gun found in the toilet belonged to Robles. In her closing argument, the prosecutor explained the reason for the two counts, stating: "And the reason there are two counts is because Mr. Robles had *that firearm* on at least two separate days. The first being November 25th of 2019, and the second at the time of his arrest on January 15th of 2020. So that's why there's two of them." (Italics added.) Importantly, at no time did the prosecution demonstrate that Robles relinquished possession of the handgun.

Because the evidence and argument demonstrated that Robles possessed the same gun continuously, substantial evidence does not support treating counts 4 and 5 as separate offenses. (See *Mason, supra*, 232 Cal.App.4th at pp. 366–367.) Although the two counts charged Robles with possession of a firearm on different dates, they are "different statements of the same offense." (§ 954.) Even though section 954 authorized the

16

prosecution to *charge* counts 4 and 5 separately, convictions for both counts cannot stand. (See *Aguayo*, *supra*, 13 Cal.5th at p. 979.) Accordingly, we reverse Robles's conviction on count 5 and remand for resentencing.

B.       *Resentencing Under Senate Bill No. 567*

Robles also argues he must be resentenced because the trial court imposed the upper term on count 1 and the associated firearm enhancement based upon aggravating factors not found true by a jury or stipulated to by Robles. At the time the court sentenced Robles to a total term of 32 years and four months in prison, the court had broad discretion to "select the term which, in the court's discretion, best serve[d] the interest of justice." (§ 1170, former subd. (b), operative until Jan. 1, 2022.) However, during the pendency of this appeal, Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) amended section 1170 to create a presumptive mandate for a middle term that could only be overcome by certain aggravating factors that had to be "stipulated to by the defendant, or . . . found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (Stats. 2021, ch. 731, § 1.3, amending § 1170, subd. (b); *People v. Flores* (2022) 75 Cal.App.5th 495, 500 (*Flores*).) The current version of section 1170 further allows courts to rely on certified records of a defendant's prior convictions in determining the sentence without submitting the prior convictions to the jury. (§ 1170, subd. (b)(3); Stats. 2021, ch. 731, § 1.)

Because Senate Bill 567[7] also affected sentencing in cases still pending on appeal (see *In re Estrada* (1965) 63 Cal.2d 740, 744, 746 [absent contrary evidence, ameliorative amendments to statutes apply to all whose judgments are not yet final on the operative date]; see also *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 307–308; *Flores*, *supra*, 75 Cal.App.5th at p. 500

---

7       Robles also cites to Assembly Bill No. 518 (Stats. 2021, ch. 441, § 1).

[applying Senate Bill 567 retroactively]), Robles contends we must remand the case for resentencing. Although the People concede that the new legislation applies to Robles's case, they maintain the error was harmless and, therefore, disagree that remand is required on the record before us.

We agree that Robles is eligible for resentencing. His appeal remains pending and, with the exception of the prior felony conviction, to which Robles stipulated, none of the other aggravating factors were found true beyond a reasonable doubt at trial or stipulated to by Robles.

However, we need not address the People's arguments that remand is unnecessary because we have already determined that remand for resentencing is warranted based on our reversal of count 5. Under the full resentencing rule, a trial court is authorized to revisit all prior sentencing decisions when resentencing a defendant. (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425; accord *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate' "].) A court conducting a full resentencing may "exercise its sentencing discretion in light of . . . changed circumstances." (*People v. Navarro* (2007) 40 Cal.4th 668, 681.) We presume the trial court will comply with current section 1170, subdivision (b), when making its full resentencing decision.

## DISPOSITION

Counts 3 and 5 are reversed, and Robles's sentence is vacated. We remand the matter to the superior court with directions to resentence Robles consistent with this opinion. Further, after resentencing Robles, the superior court shall amend the abstract of judgment to reflect the new sentence. In all

18

other respects, the judgment is affirmed. The superior court is to forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.

                                        HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


KELETY, J.

19